UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHON L. WHITFIELD, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> HUDSON COUNTY CORRECTIONAL : <br> FACILITY, et al., : <br> : <br> Defendants. : <br> : | Civ. No. 22-6426 (KM) (ESK) <br><br> **OPINION** |

**KEVIN MCNULTY, U.S.D.J.**

Pro se plaintiff Stephon L. Whitfield, a pretrial detainee at Hudson County Correctional Facility ("HCCF"), seeks to commence a lawsuit pursuant to 42 U.S.C. § 1983 related to COVID-19 protocols at HCCF. DE 1. Whitfield's complaint (DE 1) names the following defendants: (1) "Oscar Aviles, Administrator"; and (2) "Well Path Medical Dept., Michael Dantico (Director, Admin.)."[1] Whitfield also moves to proceed *in forma pauperis* ("IFP") (DE 1-1) and, via letter request, seeks pro bono counsel (DE 1-2). For the reasons below, Whitfield's motion to proceed IFP is granted, his complaint is dismissed without prejudice, and his request for counsel is denied as moot.

---

[1] The complaint may also attempt to name HCCF, though that is not clear. Whitfield listed "Hudson County Correctional Facility Admin" as a defendant in the caption, but did not include HCCF in the "parties" section of his complaint. To the extent he seeks to sue HCCF, the claim is dismissed because a county correctional facility is not a "person" acting under color of state law and, therefore, is not a proper defendant in a § 1983 action. *Rolle v. Essex Cnty. Corr. Facility*, No. 21-15198, 2022 WL 1044968, at *3 (D.N.J. Apr. 7, 2022) (Essex County Correctional Facility is not a "person" subject to § 1983 liability); *Harris v. Hudson Cnty. Jail*, No. 14-6284, 2015 WL 1607703, at *5 (D.N.J. Apr. 8, 2015) (Hudson County Jail is not a person amenable to suit under § 1983).

**I.     IFP**

A prisoner seeking to file a civil action IFP must submit an affidavit, including a statement of all assets, establishing that the prisoner is unable to pay the filing fee. 28 U.S.C. § 1915(a)(1). The prisoner also must submit a certified copy of his inmate trust fund account statement for the six-month period immediately preceding the filing of his complaint. 28 U.S.C. § 1915(a)(2). Whitfield has complied with these requirements and demonstrated indigence. DE 1-1. Accordingly, IFP status is appropriate, and Whitfield's IFP motion is granted.

**II.    The Complaint**

   **A.     Factual Allegations**

The complaint contains the following factual allegations, which, for screening purposes, I accept as true.

Whitfield is housed in "E5N." DE 1 at 6. Another detainee, C.C., transferred to HCCF and was placed in housing unit E5N without first receiving COVID-19 test results. *Id*. C.C. was housed in E5N for 5 days before medical staff notified him, on August 2, 2022, that he had tested positive for COVID. *Id*. He was "taken off population to quarantine"; "housing unit E5N was immediately put on quarantine until further notice"; and "[t]he following day . . . population was tested for COVID-19." *Id*.  On August 3, 2022, "2 inmates . . . contracted the COVID-19 virus" and on August 5, 2022, "3 more inmates . . . contracted the COVID-19 virus." *Id*. Those 5 inmates "were stripped away from population and placed in quarantine." *Id*.

 Whitfield is "in fear for [his] life and . . . disgusted that [HCCF] has no protocol in place to guarantee [his] safety and others." *Id*. He "can't sleep wondering if [he] will be the next victim to this deadly virus." *Id*. His "anxiety has never been higher" and he has "started having panic attacks and believe[s] PTSD is at its highest." He "feel[s] [HCCF] does not care to keep inmates

safe or simply doesn't know how." Whitfield "spoke to staff sergeants, Lts, and other officials" and "wrote grievances regarding [his] health," but "they never replied to any of [his] grievances and complaints." *Id.* at 5.

Based on these factual allegations, Whitfield seeks to hold Aviles, the warden, liable under § 1983 because Aviles allegedly "didn't have a testing or tracing policy in effect to prevent the spread of COVID variants" and was "not able to detect or trace quarantine inmates and staff putting [Whitfield's] life and others in jeopardy of this deadly virus." DE 1 at 4. Whitfield seeks to hold Dantico (and, possibly, Well Path[2]) liable under § 1983 for "[b]eing placed/held in a danger zone/outbreaks" and because the "staff jail med. [d]ept. has no COVID-19 testing and tracing policy," which is "putting people in danger by putting inmates on units before the[ir] test results come back," thereby "exposing us to COVID-19 virus." *Id*. Whitfield seeks "any and all damages deemed fit by the courts for cruel conditions[,] health and safety risks[,] mental anguish[,] PTSD[,] [and] stress that was brought to myself and others." *Id.* at 6.

**B.     Screening Standard**

The Prison Litigation Reform Act ("PLRA") requires district courts to review complaints in civil actions filed by prisoners, *see* 28 U.S.C. § 1915A(a), and to dismiss any case that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b) & 1915(e)(2)(B). "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in

---

[2] The complaint does not explain "Well Path Medical Dept's" relationship to HCCF, but it appears to be a provider of medical services that operates within HCCF.

3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

C.   **Section 1983**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

*Id.* Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v.*

4

*Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

A private or government health-care provider such as Well Path cannot be held liable under Section 1983 for the unconstitutional acts of its employees under a theory of *respondeat superior*. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003). Well Path is subject to liability under Section 1983 only if it "had a policy or custom that caused [the] deprivation of a constitutional right." *Defreitas v. Montgomery Cty. Corr. Facility*, 525 F. App'x 170, 176 (3d Cir. 2013) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 693–694 (1978)); *see also Perry v. Well-Path*, No. 20-2542, 2021 WL 229398, at *4 (E.D. Pa. Jan. 22, 2021) ("to hold a private health care company like Well-Path liable for a constitutional violation under § 1983, a prisoner must allege the provider had a relevant policy or custom, and that the policy caused the constitutional violation he alleges") (cleaned up).

A supervisor may also not be held vicariously liable for the actions of subordinates under § 1983. *See, e.g.*, *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Thus, to adequately plead a plausible § 1983 claim against Aviles and Dantico, Whitfield must plead facts which, if proven, would show that Aviles and Dantico were personally involved in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). This can generally be done in one of two ways. First, Aviles and Dantico could be liable if they enacted a policy, practice, or custom that was the "moving force" behind an alleged constitutional violation. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35–36 (2010). Second, they could be held liable if they "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile*

5

*Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Knowledge, for these purposes, means "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000).

**D.     Analysis**

Construing Whitfield's complaint liberally, he appears to assert a claim for unconstitutional conditions of confinement arising from his risk of exposure to the COVID-19 virus.

The Due Process Clause of the Fourteenth Amendment affords protections to pretrial detainees "at least as great as the Eighth Amendment protections available to a convicted prisoner," *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003), and is violated when a pretrial detainee is subjected to punishment that is not reasonably related to a legitimate governmental objective. *See Hubbard v. Taylor*, 538 F.3d 229, 236 (3d Cir. 2008).  The Eighth Amendment requires prison officials to provide humane conditions of confinement. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "For the conditions of confinement to rise to the level of an Eighth Amendment violation, they must deny the 'minimal civilized measure of life's necessities.'" *Betts*, 621 F.3d at 256 (quoting *Farmer*, 511 U.S. at 835). Thus, "prison officials violate an inmate's Eighth Amendment rights when they deprive her of a single identifiable human need such as food, warmth, or exercise." *Chavarriaga*, 806 F.3d at 226; *see also Betts*, 621 F.3d at 256 (inmates must receive "adequate food, clothing, shelter, and medical care," and prison officials must "take reasonable measures to guarantee the safety of inmates"). A "failure to provide minimally civil conditions of confinement to pre-trial detainees violates their rights against punishment without

6

due process of law." *Roman v. DeMarco*, No. 18-8010, 2019 WL 452736, at \*2 (D.N.J. Feb. 5, 2019) (citing *Reynolds v. Wagner*, 128 F.3d 166, 173–74 (3d Cir. 1997)).

"Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (cleaned up). To meet the objective component, the conditions must "cause inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." *Hubbard*, 538 F.3d at 233 (cleaned up). To meet the subjective component, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter,* 501 U.S. 295, 298–99 (1991); *Stevenson*, 495 F.3d at 68 ("a particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose") (quoting *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999)).

The Third Circuit addressed COVID-19 in the prison setting in *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020), explaining that when evaluating a detention facility's protocols, courts "must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and "ordinarily defer" to the expertise of prison officials in responding to COVID-19 unless there is "substantial evidence in the record that the officials have exaggerated their response" to the situation. *Id*.

The essential allegations of Whitfield's complaint are that C.C. was transferred to HCCF and placed in Whitfield's housing unit, E5N, before receiving his COVID test results, and thereafter tested positive for COVID. DE 1 at 6. This resulted in (1) C.C. being removed from E5N and placed in quarantine, (2) E5N being placed on quarantine and the inmates housed on E5N tested for COVID, and (3) 5 individuals from E5N with positive test results being removed from E5N and placed in quarantine. *Id*. These allegations, even if true, do not support a finding that the defendants acted with a culpable state of mind, nor do they rise to the level of "cruel and unusual punishment" necessary to state a claim for unconstitutional conditions of confinement.

At the outset, to the extent Whitfield claims his constitutional rights were violated merely by exposure or increased risk of exposure to the virus, the allegation is insufficient: Exposure alone does not establish a constitutional violation. *See Hope*, 972 F.3d at 329 (rejecting petitioners' arguments that exposure to COVID-19 was per se unconstitutional and that the Government must eliminate their risk of exposure to comply with constitutional mandates); *Bennett v. Aviles*, No. 22-7003, 2022 WL 17887227, at *3 (D.N.J. Dec. 23, 2022) ("Millions, of course, have contracted COVID both inside and outside of prison walls. Exposure alone does not establish that prison officials committed a constitutional violation.").

Aside from potential exposure, Whitfield's allegation that an individual was placed in his housing unit before receiving COVID test results does not establish that prison officials failed to adequately protect him or consciously disregarded a serious risk to his health or safety. Whitfield does not allege, for example, that no testing, quarantining, or other preventive measures are being taken; or that he or other detainees were denied medical treatment after becoming seriously ill. To the contrary, his complaint appears to establish that prison officials attempted to take measures—such as testing and quarantining—aimed at mitigating the threat of COVID-19. *See*

8

*Hope*, 972 F.3d at 330 (noting the "challenges inherent in the detention setting"). Whitfield alleges, for example, that once C.C. received a positive test result, other individuals in Whitfield's housing unit were tested and the unit was quarantined. DE 1 at 6. Further, the five individuals who received positive test results were removed from the housing unit for quarantining. *Id.*

At most, Whitfield alleges that C.C. was placed in Whitfield's housing unit before receiving his test results, implying that detainees are not tested and/or quarantined to the extent that he believes they should be. But imperfections in the testing and quarantining procedures—particularly in the challenging environment of a pretrial detention center where there are many competing security and logistical considerations—do not, without more, amount to unconstitutional conditions of confinement or punishment. *See Youngberg v. Romeo*, 457 U.S. 307, 325 (1982) (under the Due Process Clause, "whether respondent's constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests"); *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (quoting *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999)) ("[A] particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose."); *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."); *Chapolini v. City of Philadelphia*, No. 22-284, 2022 WL 815444, at *15 (E.D. Pa. Mar. 17, 2022) ("Chapolini also does not sufficiently allege

9

that prison officials at CFCF knew of and disregarded an excessive risk to his health and safety. Instead, he only states that he contracted COVID-19 and that he likely got it because quarantine protocols at CFCF were either inadequate or improperly followed. This is also inadequate to state a plausible claim because his COVID-19 diagnosis alone is an insufficient basis upon which to establish a constitutional violation."); *Cooper v. Miller*, No. 20-2430, 2022 WL 4654852, at *7 (M.D. Pa. Sept. 30, 2022) ("Plaintiff's disagreement with the steps that have been taken by Defendants at SCI Rockview to mitigate the risk of his exposure to COVID-19 is simply insufficient to plausibly allege a constitutional violation.").

Finally, even if Whitfield had alleged a constitutional violation arising from his conditions of confinement, his § 1983 claim would fail because he has not plausibly alleged that the defendants acted with a culpable state of mind or were personally involved in that violation. His allegations are conclusory and fail to link any defendant to the alleged wrongdoing. *See* DE 1 at 4. Additionally, to the extent Whitfield asserts that his grievances support a plausible inference of personal involvement, *see* DE 1 at 5 (Whitfield "spoke to staff sergeants, Lts, and other officials," but "they never replied"), he is mistaken. "A defendant's review and denial of a prisoner's grievance is not sufficient to establish the defendant's personal involvement in an underlying violation of the prisoner's constitutional rights." *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020); *see also Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (affirming dismissal of claims against warden and others, based on allegation they had received grievances; "Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Butler v. Penchishen*, No. 22-CV-3252, 2022 WL 4473590, at *4 (E.D. Pa. Sept. 26, 2022) ("To the extent Butler is

attempting to connect any of the individual Defendants to these events based on his allegation that he either filed grievances or wrote them letters, such allegations are unclear and, in any event, would not establish the requisite personal involvement to establish liability."). In short, the complaint, as drafted, does not establish that Whitfield's conditions of confinement were cruel and unusual or that they amounted to unconstitutional punishment.

For these reasons, Whitfield's claims are dismissed for failure to state a claim pursuant to § 1915(e)(2)(B)(ii). This is, however, an initial dismissal, and I cannot state that amendment would be futile. Consequently, this dismissal is without prejudice to the filing, within 60 days, of a proposed amended complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (leave to amend claims dismissed on screening should generally be granted unless amendment would be inequitable or futile).

## IV.   Conclusion

For the reasons stated above, Whitfield's motion to proceed IFP (DE 1-1) is granted, and his complaint (DE 1) is dismissed with prejudice as to HCCF and without prejudice as to the remaining defendants. Whitfield may file a proposed amended complaint within 60 days. Whitfield's request for the appointment of counsel (DE 1-2) is denied as moot. An appropriate order follows.

Dated: January 20, 2023

/s/ Kevin McNulty

KEVIN MCNULTY
United States District Judge